**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:24-CV-134-GNS**
*Filed Electronically*

**SUE CAROL BROWNING**                                                                 **PLAINTIFF**

**v.**

**TIMOTHY RAINWATERS, Individually and in**
**His Official Capacity as Logan County Property**
**Valuation Administrator, et al.**                                                    **DEFENDANTS**

**DEFENDANT RAINWATERS' MEMORANDUM OF LAW IN**
**SUPPORT OF HIS MOTION TO DISMISS**

Defendant, Timothy Rainwaters, individually and in his official capacity as Logan County Property Valuation Administrator, by and through Counsel, for his Motion to Dismiss the Complaint filed against him herein, submits as follows:

**FACTUAL BACKGROUND**

Plaintiff has filed an odd, rambling Complaint and has decided to drag the Logan County Property Valuation Administrator, Tim Rainwaters into her self-created morass. The great bulk of the Complaint involves her arrest and prosecution for slashing the tires of a vehicle located on her property on November 16, 2023. Defendant Rainwaters had nothing to do with that situation whatsoever, but nonetheless finds himself brought before this Court. As Logan County PVA, Rainwaters is statutorily obligated to perform certain functions in assessing real and other categories of property. In the interest of brevity, Defendant will not recite the allegations of Plaintiff's Complaint, but will simply state that they may be construed in a light most favorable to the Plaintiff as the Court considers Defendant's motion.

Simply for the act of performing Defendant Rainwaters' statutory duties as Logan County PVA with regard to Plaintiff's real property, she has sued him. Plaintiff appears to assert a claim for violation of equal protection rights. Her claims are entirely without merit and must be dismissed.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must contain sufficient facts which, taken as true, "state a claim to relief that is plausible on its face." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Al. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible if the complaint includes sufficient facts for the court to infer that the defendant is responsible for the alleged conduct. *Id*.

The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)) (internal quotation marks omitted). Moreover, the complaint is accepted as true, viewed in the light most favorable to the plaintiff, and all reasonable inferences are drawn in the plaintiff's favor. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Jelovsekv. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

## ARGUMENT

**I.     Plaintiff has failed to plead sufficient facts to state a claim against Defendant Rainwaters.**

As an initial matter, Plaintiff's Complaint is entirely devoid of any factual allegation that Defendant Rainwaters violated her right to equal protection and peaceful and quiet enjoyment of her private, residential realty. Plaintiff simply provides a legal conclusion, with no facts to support

this claim. Therefore, she has failed to plead sufficient facts in accordance with the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim of relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). The United States Supreme Court has held that a complaint must have enough factual allegations to "raise a right to relief above the speculative level" and states a claim of relief "that is plausible on its face." *Twombly*, 550 U.S. at 556, 570.  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 683. (citing *Twombly*, 550 U.S. at 556).

Furthermore, in *Twombly*, the United States Supreme Court noted that a complaint that provides only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is not sufficient and that legal conclusions are not entitled to an assumption of truth. *Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court clarified that while legal conclusions may provide a framework of a complaint, they must be supported by "factual allegations." *Iqbal*, 556 U.S. at 679. In *Iqbal*, the Supreme Court also held that the complaint, which alleged discrimination, did not contain "any factual allegation sufficient to plausibly suggest [a] discriminatory state of mind," so the pleadings were insufficient to meet the Rule 8 standard. *Id*. at 683.

Here, Plaintiff has failed to plead sufficient facts as required by the Federal Rules of Evidence and United States Supreme Court precedent. Plaintiff's Complaint is simply speculative and does not provide enough factual allegations to be plausible on its face. The Complaint only states that Defendant Rainwaters reclassified her property and increased the assessment on her property, but then changed the classification back to residential and lowered the assessment after

his conference with Plaintiff. That is it. There is no other factual allegation that could even theoretically give rise to any sort of constitutional violation. Not only has Plaintiff failed to plead enough factual content to allow this Court to draw a reasonable inference of a discriminatory state of mind, but she fails to provide any factual allegations showing any connection between Defendant Rainwaters' actions and a constitutional violation.

Plaintiff presents nothing but bare factual allegations and a legal conclusion that Defendant Rainwaters violated her constitutional rights. Because these conclusions are not entitled to an assumption of truth, her Complaint is insufficient and entirely fails to state a claim upon which relief can be granted. Thus, this Court must dismiss Plaintiff's claims against Defendant Rainwaters.

## II. The principles of comity prevent federal courts from intruding in the collection of state taxes.

Moreover, the principles of comity prohibit this Court from interfering in this matter of state tax assessment given that Kentucky provides an adequate remedy to Plaintiff. Plaintiff intends, apparently, to assert a claim against Rainwaters pursuant to 42 U.S.C. § 1983. Again, apparently, Plaintiff claims that Defendant Rainwaters somehow violated her constitutional rights by performing his statutory duties and assessing the value of her property consistent with Kentucky state law. Plaintiff's claim essentially challenges the validity of the Kentucky state property tax system in a federal court.

The Supreme Court of the United States has routinely held that federal courts may not hear actions against the validity of state tax systems, including § 1983 actions. *See Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943); *Matthews v. Rodgers*, 284 U.S. 521 (1932). Courts have held that such interference with the state tax system would be contrary to the "scrupulous regard for the rightful independence of

state governments which should at all times actuate the federal courts." *McNary*, 454 U.S. at 115-16. (quoting *Matthews*, 284 U.S. at 525). The very "maintenance of the suit itself would intrude on the enforcement of the state scheme," which would be in violation of the principles of federalism. *McNary*, 454 U.S. at 114; *See also Matthews*, 284 U.S. at 525.

If a state remedy is "plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may brought to this Court for review if any federal question is involved." *Matthews*, 284 U.S. at 526. State remedies are plain, adequate, and complete if "they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to tax." *In re Gillis*, 836 F.2d 1001, 1010 (6th Cir. 1988).

Kentucky provides Plaintiff with the appropriate remedies to appeal her tax assessment should she so desire. First, as explained in detail below, Kentucky has a strict statutory scheme detailing the process for appealing a tax assessment—a process that a taxpayer is required to exhaust prior to seeking a remedy in the courts. This process requires that the taxpayer conference with the PVA, appeal to a board of assessment appeals, appeal to the board of tax appeals before filing an appeal in court. KRS § 133.120; KRS § 49.220; KRS § 49.250. And even then, the appeal must be brought in state circuit court. KRS § 49.250. While Plaintiff conferenced with Defendant Rainwaters, she has failed to proceed through this appeals process. This process is plain, adequate, and complete as she is allowed to be heard on multiple occasions and may ultimately obtain a judicial determination in state court.

If Plaintiff believes that a violation of her constitutional rights has occurred, she may raise that during her appeal at the state level. In fact, the Sixth Circuit has noted that Kentucky courts have "shown no reluctance in remedying constitutional violations when found" in tax assessment

5

cases. *In re Gillis*, 836 F.2d at 1012; *See also Russman v. Luckett*, 391 S.W.2d 694 (Ky. Ct. App. 1965).

It is clear that Kentucky has a plain, adequate, and complete method for remedying this situation—Plaintiff just has not attempted to resolve it via the statutory scheme provided to her, and every other tax paying citizen, by the Kentucky legislature. This Court should not take Plaintiff up on her invitation to entertain a challenge to Kentucky's tax assessment system. Upon the basis of comity, Plaintiff's Complaint against Defendant Rainwaters must be dismissed.

### III.     Plaintiff has failed to exhaust her administrative remedies.

Plaintiff has failed to exhaust her administrative remedies for appealing a property tax assessment, therefore her claims against Defendant Rainwaters must be dismissed. It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-21 (1938).  Kentucky statutes clearly provide a strict administrative remedy, which requires an aggrieved taxpayer to proceed through multiple steps to appeal a tax assessment.  Rather than properly appealing Defendant Rainwaters' decision and exhausting her administrative remedies, Plaintiff is now inappropriately attempting to file a collateral action contending that Defendant Rainwaters violated her right to equal protection.

KRS § 133.120 outlines the appeal procedure for real property assessments. First, the taxpayer must request a conference with the property valuation administrator or his or her designated deputy. KRS § 133.120(1)(a). At this meeting, the property valuation administrator or the deputy shall provide the taxpayer with an explanation of the procedures followed in deriving the assessed value for the property and may offer or agree to a different assessed value. *Id*. at

(1)(c)-(d). Moreover, at this meeting, the property valuation administrator or the deputy must also provide the taxpayer with an explanation of the appeals process. *Id.* at (1)(c).

Should the taxpayer still be unhappy with the property value after the meeting, they may appeal to the board of assessment appeals. *Id.* at (2)(a). If a taxpayer is still aggrieved following the board of assessment appeal's opinion, they must then file a complaint or petition of appeal to the Board of Tax Appeals pursuant to KRS § 49.220. *Id.* at (10). Only after a final order from the Board of Tax Appeals may a taxpayer appeal to the court system—and even then, the suit must be filed in the Franklin Circuit Court or the Circuit Court of the county in which the taxpayer resides or conducts his place of business, not federal court.  KRS § 49.250(1).

Here, it appears that Plaintiff engaged in a conference with Defendant Rainwaters. In fact, in her Complaint, Plaintiff states that Defendant Rainwaters actually lowered the assessment and changed the designation of the property back to residential after this meeting. [DN 1, ¶ 79]. Yet Plaintiff took no further steps to appeal her property tax assessment. She did not appeal her case to the board of assessment appeals or the Board of Tax Appeals, nor has she filed an appeal in a Kentucky Circuit Court. Plaintiff has filed this frivolous suit in federal court, attempting to circumvent Kentucky's strict administrative appeals process.

Therefore, because Plaintiff has failed to exhaust her administrative remedies, her Complaint against Defendant Rainwaters must be dismissed.

**IV.    Plaintiff has failed to state a claim for an equal protection violation against Defendant Rainwaters.**

Plaintiff's Complaint is entirely devoid of any factual allegations that would give rise to an equal protection claim. As previously discussed, Plaintiff simply alleges that Defendant Rainwaters reclassified her property as commercial, but ultimately reverted the classification back

to residential. There is simply no allegation, other than Plaintiff's legal conclusion, that suggests Defendant Rainwaters violated Plaintiff's right to equal protection.

The Supreme Court of the United States has held that the Fourteenth Amendment's Equal Protection clause does not prohibit or forbid tax classifications and the state's power to classify for purposes of taxation is of "wide range and flexibility." *Louisville Gas & Electric v. Coleman*, 277 U.S. 32, 37 (1928). However, the classification must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Id*. (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

Furthermore, the equal protection clause does not prohibit taxation inequality that results from "mere mistake or error in judgment of tax officials, or which is not shown to be the result of intentional or systematic undervaluation of some but not all taxed property in a single class." *Charleston Fed. Sav. & Loan Assoc. v. Alderson*, 324 U.S. 182, 191 (1945) (internal citations omitted). Tax officials are presumed to act in good faith. *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 253 (1918). The taxpayer has the burden of establishing "intentional discrimination." *Southland Mall, Inc. v. Garner*, 455 F.2d 887, 889 (6th Cir. 1972).

To prove equal protection, a taxpayer may demonstrate that his property was "assessed at its true value while other property was intentionally undervalued," or he may show that his property "was assessed at the same level as other properties because the taxing authorities intentionally chose to ignore clear differences in value which should have lessened his assessment." *Id.*; *Sioux City Bridge Company v. Dakota County*, 260 U.S. 441 (1923); *Cumberland Coal Company v. Board of Revision of Tax Assessments in Greene County, Pa.*, 284 U.S. 23 (1931). Previously, taxpayers have prevailed by demonstrating "a systematic pattern of

8

discrimination" or "clear proof that a tax was discriminatorily aimed at a single taxpayer has been held to support an equal protection claim." *Southland Mall, Inc*. 455 F.2d at 889. (internal citations omitted). However, efforts to prove intentional discrimination without a systematic pattern of discrimination or direct evidence of improper intention have "rarely succeeded in federal courts, since there is a natural reluctance to infer official misconduct from ambiguous circumstances alone." *Id*. at 889-90.

Plaintiff has offered no allegation whatsoever to demonstrate a systematic pattern of discrimination or that the tax was discriminatorily aimed at her. In *Iqbal*, the Supreme Court dismissed the Plaintiff's complaint for failing to meet the Rule 8 standard because the complaint did not contain an allegation to suggest defendant's discriminatory state of mind. *Iqbal*, 556 U.S. at 683 (2009). Similarly, Plaintiff's Complaint is devoid of any factual allegation demonstrating a discriminatory intent or motive on Defendant Rainwaters' behalf. Moreover, Plaintiff has failed to provide any basis that she was treated differently than others in similar circumstances. Simply put, Plaintiff fails to put forth any set of facts which would allow the Court to reasonably infer official misconduct by Defendant Rainwaters. Plaintiff's equal protection claim fails as a matter of law and must be dismissed.

### V.     Plaintiff has failed to state a claim under the *Monell* standard.

Plaintiff appears to attempt assert a Fourteenth Amendment equal protection claim against Rainwaters in his official capacity as Logan County PVA. As a matter of law, an official capacity claim of that nature is a claim against the Commonwealth of Kentucky and/or Logan County. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989). Regardless of whether this Court finds that Defendant Rainwaters is a state official or is a

county official, the official capacity claims against him must be dismissed as they are essentially claims against Kentucky and/or Logan County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (2018). "[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (second alteration in original) (citation omitted). A plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000) (quoting B*d. of Cnty. Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 404 (1997)).

Neither the doctrine of *respondeat superior* nor any other theory of vicarious liability may serve as a basis for holding local governing entities liable under § 1983 for any constitutional torts of its employees. *Harris*, 489 U.S. at 385. Nor can a municipality be liable if an employee applies an otherwise constitutional policy or custom in an unconstitutional manner. *Id*. at 378. Rather, as the Supreme Court stated in *Graham*, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation … thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166.

Assuming *arguendo* that Plaintiff can prove that Defendant Rainwaters violated her constitutional rights, in order to recover against Defendant Rainwaters in his official capacity, *i.e.*, the Commonwealth of Kentucky and/or Logan County, Plaintiff would also be required to prove that the actions of Defendant Rainwaters were done pursuant to a "policy or custom" attributable

to Kentucky and/or Logan County. *Monell*, 436 U.S. at 694. A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force or law." *Id*. In turn, the force of law must include "[d]eeply embedded traditional ways of carrying out state policy," *Nashville, Chattanooga & St. Louis Railway Co. v. Browning*, 310 U.S. 362, 369 (1940), and "must reflect a course of action deliberately chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciana v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1995).

In addition, the mere existence of such a policy or custom will be insufficient to establish municipal liability: "[a] governmental entity is liable under § 1983 only when the entity itself is the 'moving force' behind the deprivation…; thus, in an official-capacity suit, the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (internal citations omitted). Further, "*more proof than [a] single incident will be necessary … to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.*" *Tuttle*, 471 U.S. at 824 (emphasis added).

Here, the entirety of Plaintiff's official capacity claims are premised on Plaintiff's unfounded belief that Defendant Rainwaters violated her constitutional rights. Plaintiff's only allegations are that Defendant Rainwaters reclassified her property to commercial but that he changed it back to residential following his meeting with Plaintiff. These statements fail to point to any policy or custom of the Commonwealth of Logan County which were the alleged moving force behind a purported violation of her constitutional rights.

In short, Plaintiff has not presented any evidence that Defendant Rainwaters acted pursuant to an official policy or custom of Kentucky and/or Logan County in allegedly violating Plaintiff's

constitutional rights. Therefore, all of Plaintiff's official capacity claims against Defendant Rainwaters must be dismissed.

### VI. Defendant Rainwaters is entitled to the protection of multiple immunities.

Plaintiff filed this suit against Defendant Rainwaters in both his individual and official capacity as Property Valuation Administrator. However, as Property Valuation Administrator, Defendant Rainwaters enjoys immunity from suit in both his official and individual capacities. Therefore, all claims against Defendant Rainwaters fail.

#### a. Defendant Rainwaters is entitled to the protection of immunity from all claims against him in his official capacity.

Plaintiff's Complaint specifically names Timothy Rainwaters as a Defendant "Individually and in his Official Capacity As Logan County Property Valuation Administrator." Defendant Rainwaters is entitled to the protection of immunity from all claims against him in his official capacity.

##### i. Federal Claims

**Eleventh Amendment**

Defendant Rainwaters is entitled to the protection of immunity, granted by the United States Constitution and the Supreme Court of the United States, for all federal law claims against him in his official capacity. The Eleventh Amendment to the United States Constitution states that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court of the United States has expanded the plain language of the Amendment in two important ways. First, the "Eleventh Amendment immunity applies to private suits commenced against a state by its own citizens." *Skatemore, Inc. v. Whitmer*, 40 F.4th

727, 732 (6th Cir. 2022) (citing *Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890)). Second, the Eleventh Amendment is "applicable to state officials sued in their official capacity." *Skatemore*, 40 F.4th at 732. (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). This is because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169. (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Therefore, state agencies and state officials sued in their official capacity are entitled to sovereign immunity pursuant to the Eleventh Amendment. *Skatemore*, 40 F. 4th at 732.

Kentucky statutes specifically state that a property valuation administrator is a "state official." KRS § 132.370(1). Thus, as PVA, Defendant Rainwaters is entitled to the immunity granted in the Eleventh Amendment to the Constitution of the United States for all claims against him in his official capacity. As a result, all claims against Defendant Rainwaters in his official capacity must be dismissed.

### ii. State Law Claims

It is unclear whether Plaintiff has actually asserted any sort of state law tort claim against Defendant Rainwaters. However, to the extent that the Court determines that some such claim has been asserted, dismissal is necessary as Rainwaters is entitled to the protection of various immunities.

**Sovereign & Governmental Immunity**

Defendant Rainwaters is entitled to the protection of sovereign immunity and governmental immunity for all state law claims against him in his official capacity. The state of Kentucky is entitled to sovereign immunity. Sovereign immunity is "an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Independence Bank v. Welch*, 636 S.W.3d 528, 532 (Ky. 2021)

(quoting *Yanero v. Davis*, 65 S.W.3d 510, 517-18 (Ky. 2001)). As a result, this protection extends to Kentucky state officials sued in their official state capacities. "A suit against state officials in their official capacity is not a suit against the officials but rather is a suit against the officials' offices and, thus, is no different from a suit against the State itself." *Edwards v. Van De Rostyne*, 245 S.W.3d 797, 803 (Ky. Ct. App. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 59 (1989).

Kentucky statutes specifically state that a property valuation administrator is a "state official." KRS § 132.370(1). As PVA, a suit against Defendant Rainwaters is a suit against Kentucky itself. Therefore, Defendant Rainwaters is entitled to sovereign immunity and all claims against Defendant Rainwaters in his official capacity must be dismissed without prejudice

Additionally, as an employee of a government agency, Defendant Rainwaters is entitled to the protection of governmental immunity in his official capacity. Governmental immunity limits imposition of tort liability on a government agency when it is performing a governmental, rather than a proprietary function. *Yanero*, 65 S.W.3d at 519. The relevant factors in determining whether an agency is a government agency is analyzing whether it is supported by money from the state treasury, whether it was created to discharge a government function, or whether it carries out a function integral to state government. *See id*. As an arm of the central state government, the property valuation administration office is a government agency. *See id*. at 520. The PVA office was created to assess property values and collect taxes—a function integral to the state. Moreover, the PVA office is supported by money from the state treasury, including a yearly expense allowance. KRS § 132.597. Clearly, the PVA office is a governmental agency.

Furthermore, as PVA, Defendant Rainwaters was performing a government function when he classified and assessed the taxable value of Plaintiff's property. The test for determining

14

whether a government agency is performing a governmental or proprietary function is whether the agency is "carrying out a function integral to state government," or whether it is "engaged in a business of a sort theretofore engaged in by private persons or corporations for profit." *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003). Here, the PVA office exists to classify property and assess the taxable value—a function integral to government. Private persons or corporations for profit do not assess property values for the sole purpose of collecting taxes. This is a function solely reserved for the government. As PVA, Defendant Rainwaters performed a government function by classifying Plaintiff's property as a venue.

Given that the PVA office is a governmental agency that performs a governmental function, the PVA office is entitled to governmental immunity. As a result, Defendant Rainwaters is also entitled to governmental immunity. When an officer is sued in his official capacity, his actions are "afforded the same immunity, if any, to which the agency, itself [is] entitled." *Yanero*, 65 S.W.3d at 522. Defendant Rainwaters, a state officer employed with the PVA office, is therefore entitled to governmental immunity on all claims made against him in his official capacity.

### b. Defendant Rainwaters is entitled to the protection of immunity from all claims against him in his individual capacity.

Plaintiff's Complaint specifically names Timothy Rainwaters as a Defendant "Individually and in his Official Capacity As Logan County Property Valuation Administrator." Defendant Rainwaters is entitled to the protection of immunity from all claims against him in his individual capacity.

### i. Federal Law Claims

#### Qualified Immunity

Defendant Rainwaters is entitled to the protection of qualified immunity for all federal law claims against him in his individual capacity. The United States Supreme Court explained the

15

doctrine of qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therein, the Court held that government officials engaged in the performance of discretionary functions are generally "shielded from liability [and, indeed, from suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.; see also *Pray v. City of Sandusky*, 49 F.3d 1154, 1157-58 (6th Cir. 1995); *Ireland v. Tunis*, 113 F.3d 1435, 1448 (6th Cir. 1997); and *Saylor v. Board of Education of Harlin County, Kentucky*, 118 F.3d 507, 512 (6th Cir. 1997). Qualified immunity protects the official from liability for any "objectively reasonable" action, determined in light of clearly established law at the time of the action. *Id*. Thus, the Court must determine whether it was reasonable for Defendants to believe that their "conduct was lawful, in light of the clearly established law and the information [in their] possession." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Plaintiff has the ultimate burden to prove that Defendants are not entitled to qualified immunity. *Rich v. City of Mayfield Hts*, 955 F.2d 1092, 1095 (6th Cir. 1992). Claims of qualified immunity are assessed on a fact-specific basis, to ascertain whether the particular conduct of the defendant officer infringed a clearly established federal right of the plaintiff, and whether an objectively reasonable officer would have believed that his conduct was lawful under federal law. *Anderson v. Creighton*, 483 U.S. 635 (1987). The Sixth Circuit has reemphasized the breadth and scope of the qualified immunity doctrine, by stating that it affords individuals "ample room for mistaken judgment" by protecting all but the plainly incompetent or those who knowingly violate the law. *Sova v. City of Mount Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998).

Plaintiff has presented no evidence that Defendant Rainwaters acted in a "plainly incompetent" fashion, nor that he "knowingly violated the law." *Malley*, 475 U.S. at 349. Defendant Rainwaters performed his job in exactly the manner society and the judicial system

16

expects of him given the circumstances and the information in his possession at the time. *Hunter*, 502 U.S. at 227. As set forth throughout this Memorandum, Plaintiff has failed to present any affirmative evidence that Defendant Rainwaters violated a clearly established constitutional right. As a result, Defendant Rainwaters is entitled to qualified immunity in his individual capacities.

### ii. State Law Claims

**Qualified Official Immunity**

Furthermore, Defendant Rainwaters is entitled to the protection of qualified official immunity for all state law claims against him in his individual capacity, as he exercised discretion while performing a task within the scope of his authority and did so in good faith.

Qualified official immunity prevents public officers or employees from being liable for "[t]he negligent performance … of (1) discretionary acts or functions i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith; and (3) within the scope of the employee's authority." *Yanero*, 65 S.W.3d at 552. However, "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id*.

A discretionary act is one that requires the "exercise of reason" and the "discretion in determining how or whether the acts shall be done." *Haney v. Monskey*, 311 S.W.3d 235, 240 (Ky. 2010). But a ministerial act is one that is done "without regard to [personal] judgment or opinion." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014).

The Kentucky Constitution and statutes delineate the duties of a property valuation administrator. Inherent in a PVA's duties is discretion in classifying property, the method of

17

assessing properties, and conferencing with taxpayers. For example, KRS § 132.191 provides a list of valid valuation methods that a PVA may use in assessing the fair cash value of a property. The PVA also has the authority to review any applications for exemptions, such as a homestead exemption. *See* KRS § 132.810. Additionally, the PVA has the authority to conference with an aggrieved taxpayer and either offer or agree to any changes to the tax bill. KRS § 133.120.

When classifying and reclassifying property, the PVA must use his discretion and exercise his best judgment. The PVA must also use his best judgment and opinion during an appeals conference to determine the appropriate resolution. Therefore, Defendant Rainwaters' actions in determining an appropriate assessment of Plaintiff's real property were purely discretionary.

Furthermore, Plaintiff has presented no factual allegation to demonstrate that Defendant Rainwaters acted in bad faith. A Plaintiff can show bad faith by showing that an official "knew or reasonably should have known" that his actions "would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury…" *Yanero*, 65 S.W.3d at 523. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982). A Plaintiff can also prove bad faith by showing that the officer "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Bryant v. Pulaski Cty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011). Plaintiff has offered no allegation that Defendant Rainwaters acted in bad faith. She has not alleged that Defendant Rainwaters knew that his actions would violate her constitutional rights, nor has she suggested that Defendant Rainwaters intended to harm her or acted with a corrupt motive. Plaintiff simply states that Defendant Rainwaters reclassified her property and is unable to show bad faith.

And as discussed previously, Defendant Rainwaters' duties includes classifying real property and assessing the taxable value, whereby making his decision to reclassify Plaintiff's

property within the scope of his authority. Therefore, because Defendant Rainwaters exercised his discretion, in good faith, while performing a task within the scope of his authority, he is entitled to qualified official immunity. With Defendant Rainwaters being entitled to immunity, in both his official and individual capacities, on all claims, Plaintiff's Complaint against him must be dismissed with prejudice.

## CONCLUSION

The Complaint against Defendant Rainwaters fails to state a claim upon which relief can be granted. Therefore, the claims asserted against Defendant Rainwaters must be dismissed with prejudice.

WHEREFORE, Defendant, Timothy Rainwaters, individually and in his official capacity as Logan County Property Valuation Administrator, respectfully requests that Plaintiff's Complaint against him be dismissed.

ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street; P.O. Box 770
Bowling Green, KY 42104-0770
Telephone: (270) 781-6500
Facsimile: (270) 782-7782

*/s/ Aaron D. Smith*_____
AARON D. SMITH
MICHAEL A. OWSLEY
KATE E. PAYTON
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this 13th day of December, 2024, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record and that a copy was sent via electronic mail and/or U.S. Mail to the following:

Hon. Stella B. House
P.O. Box 422
Manchester, KY 40962
Counsel for Plaintiff

                                                /s/ Aaron D. Smith
                                                AARON D. SMITH