UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-134-GNS
*Electronically Filed*

SUE CAROL BROWNING                                              PLAINTFF

V.

LEON SMITH,
Individually And In His Official Capacity
As Superintendent Of The Logan County Board of Education

SHERIFF STEPHEN STRATTON,
Individually And In His Official Capacity
As Sheriff Of The Logan County Sheriff's Department

VINCENT LEE BROWN,
Individually And In His Official Capacity
As A Deputy And School Resource Officer
With The Logan County Sheriff's Department

JOSEPH BRENT,
Individually And In His Official Capacity As A Sergeant
With The Logan County Sheriff's Department

Timothy Rainwaters,
Individually And In His Official Capacity
As Logan County Property Valuation Administrator          DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FIRST AMENDED COMPLAINT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, **SUE CAROL BROWNING ("Ms. Browning"),** by counsel, asserts claims

against Defendants, **LEON SMITH,** individually and in his official capacity as Superintendent of

the Logan County Board of Education, **STEPHEN STRATTON,** individually and in his official

capacity as Sheriff of the Logan County Sheriff's Department, **VINCENT LEE BROWN,**

individually and in his official capacity as a Logan County Deputy Sheriff and School Resource

Officer, **JASON BRENT,** individually and in his official capacity as a Sergeant with the Logan

1

County Sheriff's Department, and **TIMOTHY RAINWATERS,** individually and in his capacity as Logan County Property Valuation Administrator, for violations of federal and state laws and her federal and state civil and Constitutional rights, as follows:

## INTRODUCTION

1.      Plaintiff is seeking to hold Defendants accountable for their violations of and infringements on her civil and Constitutional rights under both the United States and Kentucky Constitutions and both federal and state laws.

2.      Defendants are all individuals acting under the color of state law.

## PARTIES

3.      Plaintiff, **SUE CAROL BROWNING**, an individual, is a resident of Logan.

4.      Defendant, Leon Smith, was the Superintendent of the Logan County Board of Education **("LCBOE")** with offices located at 2222 Bowling Green Road, Russellville, Logan County, Kentucky, in the USA, at all relevant times.

5.      Defendant, Stephen Stratton **("Sheriff Stratton")**, having been elected as the Logan County Sheriff, was the Sheriff of the Logan County Sheriff's Department with offices located at 100 North Owen Street. Russellville, Logan County, Kentucky, in the USA, at all relevant times.

6.      Defendant, Logan County Deputy Sheriff Vincent Lee Brown **("SRO Brown"),** served as a School Resource Officer at the Auburn Elementary and Middle School **(the "School")**, which is operated by the Logan County Board of Education, and was employed by the Logan County Sheriff's Department at all relevant times.

Defendant, Logan County Sergeant Jason Brent **("Sgt Brent")**, was employed by the Logan County Sheriff's Department at all relevant times.

Defendant**,** Property Valuation Administrator Timothy Rainwaters, having been elected as the Logan County Property Valuation Administrator **("PVA")**, was the Logan County PVA at all relevant times.

## **FACTUAL BACKGROUND**

**7.**     Between 1986 – 2015, Ms. Browning was an attorney, who practiced law in Logan County, served as an Assistant Logan County Attorney, and served as a District Court Judge in Logan and Todd Counties. Ms. Browning retired from the bench with full Judicial retirement benefits in 2015 but remains licensed to practice law in Kentucky.

**8.**     In October of 2019, the Logan and Todd County Circuit Judge's race was being influenced by former Circuit Judge, Tyler Gill, who was campaigning publicly for his former Clerk, Logan County Attorney Joe Ross, to succeed him. Ms. Browning made several Facebook posts in support of his opponent, Joe Hendricks, who ultimately won the election. The Assistant County Attorney, Elizabeth Gill Teel, a cousin of the former Circuit Judge, was disappointed by the outcome, as she had hoped to become County Attorney if Joe Ross had won the judicial race. Ms. Teel is the City Attorney for the City of Russellville in addition to being an Assistant Logan County Attorney. Ms. Teel's husband, a former employee of the LCBOE, was serving as the Assistant Principal at the School at the relevant time. The Facebook posts made by Ms. Browning in support of Joe Hendricks were not taken well by Logan County Attorney Joe Ross, who was on the same political side as Sheriff Stratton.

**9.**     Between October and November of 2019, Ms. Browning inquired about purchasing the old Auburn Presbyterian USA Church building, which had not been used for services for a few years. Ms. Browning had heard rumors of others purchasing it, but it remained

vacant. Ms. Browning had loved the building since she was a child and hated to see it torn down due to its architectural charm and history and her sentimental attachment to it. Ms. Browning met with members of the Presbytery and made an offer on the building contingent on it being re-zoned by the City of Auburn **(the "City")** for commercial use. Ms. Browning waited nearly a month for a meeting of the City's Council only to be told that re-zoning was probably not possible and that to zone it for commercial use would constitute spot zoning, which was not legal. Ms. Browning requested options to use it commercially, so she could justify the purchase and renovations financially. The City, based on Zoning Ordinances enacted in 1990, advised Ms. Browning that the only permissible use of her property located at 141 North Lincoln Street was as a residence or a church; commercial use of any type was not permitted by the City. As Ms. Browning's request was denied by the City and she was told it could be used as a church or residence only, she withdrew her offer to purchase it.

**10.**     Within a week, Ms. Browning received a call from the Presbytery. Ms. Browning was told that they wanted her to become the steward and owner of the building, if she could use it to implement her dream to share it for Christian celebrations and use it as she saw fit for the benefit of those who love and respect it, keeping it as a second home. In November of 2019, Ms. Browning purchased the former church building, named it **"The Haven"**; began renovations; and started using it as a second home. Ms. Browning has never advertised The Haven or rented it or allowed it to be utilized commercially or "for profit in any way. Ms. Browning has not treated The Haven as anything other than a private residence for tax or any other purpose. The building was renovated over 2020 and was basically finished in 2021, when her cousin got married there in May. That was the first of

several weddings, showers, overnight visits, family dinners, and other celebrations she has hosted for family and friends at The Haven.

11.     In April of 2021, Ms. Browning received a call from the City Clerk, wanting to know if she had any rental property available in the City. Ms. Browning said, "No." The City's Clerk was calling during the day from the City Hall and proceeded to tell Ms. Browning about the hardships of another employee of the City. The City's Clerk told Ms. Browning that the husband of Sarah Moore **("Sarah")**, Logan County Deputy Sheriff Bill Moore **("Deputy Sheriff Moore")**, had left Sarah and her children, who "had no place to go" and were "desperate" for a place to reside. Sarah's daughter served as a babysitter for the granddaughter of the Mayor of the City. The Clerk said that there was absolutely nothing available for rent anywhere near the City. The Clerk indicated that she knew Ms. Browning was in Florida and at The Haven a lot and allowed people to live in her log house previously. Ms. Browning responded that those people were single friends and a couple once, who lived in her basement, which would not be suitable for a mother and two teenage children, one an eighteen-year-old boy.

12.     After hanging up the phone, Ms. Browning succumbed to the pressure and since an employee of the City inquired on the City's time about this matter and spent all the time she did explaining the dire nature of the problem to Ms. Browning, decided she would be seen as selfish if she did not try to help. At that time, she had no idea that most people in town knew that this family would not be good neighbors, much less housemates. In an effort to help this family, Ms. Browning agreed to share her log home (not The Haven), which is located just outside of the City (not The Haven), with Sarah and her two children, Jacob, 18 years old, and Ella, 16 years old. Since Ms. Browning was spending several days

at a time in Florida with a friend at that time and then staying at The Haven some of the time, she moved her clothing and personal effects to the basement in her log home and allowed the family needing housing to utilize the main two (2) floors of the house, including three (3) bedrooms and two (2) bathrooms upstairs.

13.     Ms. Browning explained to Sarah that she was not renting the house and advised her not to say she was renting it. There was no written rental agreement. Ms. Browning made it clear to Sarah that she was sharing her log home with her, not renting it to her. Ms. Browning agreed to SHARE her log home with Sarah and her children, and Sarah agreed to pay $700.00 per month towards expenses, including utilities. Given the value of the log home, rental value of the entire residence would have probably exceeded $2,500.00 per month, but Ms. Browning agreed to share her log home with Sarah and her children, as she wanted to help them get ahead during what had been presented to her as a very devastating time for them. Ms. Browning agreed to this arrangement for up to a year, so Sarah could find another house.

14.     The house sharing became a problem. Ms. Browning quickly realized neither Sarah nor her children performed house cleaning or had any respect for antique furniture or anything else Ms. Browning had cherished for decades. The Moore family and their dogs littered Ms. Browning's yard with trash and other objects. Sarah had two dogs, and one of them tore up things outside and destroyed multiple packages Ms. Browning had delivered to her log home. Ms. Browning would walk into a smelly house full of overflowing trash bags sitting in the middle of the kitchen floor, dirty dishes in the sink and on the counter, and floors that had not been cleaned since she allowed Sarah and her children to move into the house. At one point, Ms. Browning came home to her log home, which contained her

own personal papers, and found a stranger, a teenage girl, who had been left there by Sarah to house sit for a week without transportation. Before Ms. Browning evicted Sarah and her two children from her log home, Sarah also allowed a foreign exchange student to move into her log home without her permission. Ms. Browning voiced her objections to the disrespect, filth, and strangers in her log home, but the problems just became worse.

**15.**     On November 23, 2021, a beloved neighbor, who had a husband who was fighting cancer at the time and has since died, messaged Ms. Browning with the news that:

(a)     The teenage girls living in Ms. Browning's home, including the foreign exchange student, who Ms. Browning did not give permission to be there inside her home, broke several plates on the road while filming a video laced with vulgarity, which they shared on Tik-Tok;

(b)     Sarah's teenage boy had been hunting without permission on the neighbors' land and trespassing, along with other people he had with him; and

(c)     Her neighbor's husband had a flat tire, which was most certainly (but not provable in court per local law enforcement) caused by the broken plates in the neighborhood road.

**16.**     Friends also began to share other information about the bad behavior of the people in Ms. Browning's log home, including a particularly vulgar post featuring the sixteen-year-old girl pictured inside the log home. Ms. Browning has a hard time even going into the great room of the log home now, because of the vision of the publicized video. Ms. Browning has not served a meal in the dining room of the log home since then, because the memory is so nauseating.

**17.**     Ms. Browning called law enforcement and begged for help from the Logan County Sheriff's Department. A Game Warden arrived at Ms. Browning's home that night. Deputy

Sheriff Moore, who is the father of Sarah's children, arrived there too. Ms. Browning asked Deputy Sheriff Moore to leave the log home, because he was the reason she was pressured into allowing Sarah and his children to move into her log home. Deputy Sheriff Moore refused to leave Ms. Browning's log home. Ms. Browning was told by Sheriff Stratton that there was nothing at all he could do to help her. Neither Sheriff Stratton nor Deputy Sheriff Moore would remove the law-breaking children from the log home. Sarah and her children stayed there in the log home through the holidays and continued to trash the log home and terrorize the neighbors, until Ms. Browning filed an eviction proceeding and obtained an eviction Order. The Logan County Sheriff's Deputies, who came to the log home. basically told Ms. Browning that she needed to get out of the log home and go somewhere else and that she could get into trouble if she touched anything that belonged to Sarah and her children or the foreign exchange student. Ms. Browning was displaced from the log home by the Logan County Sheriff's Department during Thanksgiving and Christmas of 2021 and New Years of 2022 and told that the thousands of dollars in damages to the log home and her personal property therein would have to be dealt with in a civil action.

18.     After Ms. Browning went to court for the eviction action and evicted Sarah from the log home, she spent weeks cleaning, paid friends to help clean, and returned a truck loaded full of things Sarah and her children had left behind at the log home to a Council Member of the City, which included empty, unwashed beer and liquor bottles left on shelves in the log home. Ms. Browning is still looking at previously beautiful broken and damaged furniture destroyed and trashed by Sarah and her children, which includes, without limitation, a bed owned by the Vice President from Kentucky, Alben Barkley, for whom Lake Barkley is named, which Ms. Browning's father bought at an auction in

Louisville in 1983 while she was in law school there Sheriff Stratton and the Logan County Sheriff's Department failed to protect Ms. Browning's personal and real property and property rights, failed to charge Sarah and her adult child with criminal mischief, failed to protect Ms. Browning's rights as a resident and the owner of her log home at 307 Quarry Road, Auburn, Kentucky; and failed to remove the trespasser, a foreign exchange student, who Ms. Browning never gave permission to live there.

19.      In late 2022, a City Police officer, Chief of the Auburn City Police, B.J. Ferguson (**"Officer Ferguson"**), parked on Ms. Browning's pavement in her backyard on a regular basis until she asked him to stop. Officer Ferguson, acting under color of authority, implied that Ms. Browning should welcome his presence in her yard regularly. Ms. Browning was required to ask Officer Ferguson not to park in her yard, except for an emergency, not wanting anyone to believe her property was public or commercial. Officer Ferguson seemed irritated by the fact that Ms. Browning did not want to allow illegal parking on her private, residential property even though Ms. Browning patiently explained to Officer Ferguson that the relevant real property is private, residential property and having a police cruiser there every day was not a peaceful experience for Ms. Browning and her guests. Officer Ferguson told Ms. Browning she needed signs, so he would know it was her private property. With only a few exceptions, signs are prohibited in residential areas in the City by the City's ordinances. Ms. Browning felt compelled to erect two signs, however, which, though in technical violation of the ordinance, are within the spirit of it, because they are visible while being polite and attractive. Ms. Browning incurred expenses in doing so even though other residential yards do not have said signs and are not subjected to trespassing by the local police and others.

20.    In November of 2022, Sheriff Stratton placed a campaign sign on Ms. Browning's grass at The Haven. Ms. Browning took down the campaign sign and carefully placed it exactly where it was put up. The next morning, a friend called her to say Sheriff Stratton was parked on her real property and was taking pictures of the sign she had taken down. Not wanting to get into trouble herself but wanting her friends and family to know that her family did not support Sheriff Stratton's re-election campaign, Ms. Browning made a public Facebook post about the situation.

21.    Sheriff Stratton knew that The Haven was Ms. Browning's private residence. Sheriff Stratton knew the pavement and grass behind The Haven was part of Ms. Browning's private, residential property. Sheriff Stratton trespassed on Ms. Browning's property to install his campaign sign and trespassed on Ms. Browning's private realty to take photographs after she took down his campaign sign. Sheriff Stratton interfered with Ms. Browning's rights to freedom of association and freedom of speech, as well as her property rights, by implying she supported him, trespassing on her private property, and placing his campaign sign on her private property, all without her permission. Sheriff Stratton's actions created the false impression that Ms. Browning supported Sheriff Stratton's campaign for Sheriff and violated Ms. Browning's right to support the candidate of her choice.

22.    Employees of the School were called or messaged by Ms. Browning on multiple occasions from 2020 until 2023 about illegal and unauthorized parking on Ms. Browning's private realty. At times, buses were parked in Ms. Browning's driveway and yard when the School's parking lot had almost no cars in it, such as on weekends. Ms. Browning repeatedly asked the LCBOE's personnel to tell their employees, students, and guests not

10

to park on her private property without permission. The LCBOE, by its inaction, encouraged illegal behavior by the employees who worked at and students who attended the School, as well as their family members. The LCBOE has a duty to educate students about basic respect for property rights of others, as guaranteed by federal and state Constitutions. The LCBOE has failed to educate students about this right and has failed, as a government-funded institution, to support and uphold the Constitutional property rights of its neighbors by allowing their guests and employees to park on private property.

23.    Neither the Mayor of the City nor the City enforces the requirement for parking spaces, as it relates to the School, which was acting as a commercial restaurant on November 16, 2023, having sold hundreds of meals in advance to adults.

24.    The parking space requirement of Section 3.017 of the City's ordinances, one parking space for each five seats at maximum capacity, is the same for restaurants and places of public assembly.

25.    When contacted by the School and/or SRO Brown and/or any other authority on November 16, 2023, Officer Ferguson and the other City Police Officers and/or employees of the City failed to provide Ms. Browning assistance.

26.    The Mayor of the City of Auburn and the City's employees also failed to clarify that The Haven is Ms. Browning's private, residential realty, deserving of protection from trespassers, on November 16, 2023.

## COUNT I

## VIOLATIONS BY LCBOE

27.    Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

28.    The LCBOE operates the School.

11

29.    The School is located on the opposite side of the street and about one-half block away from Ms. Browning's private residence a/k/a "The Haven".

30.    The Superintendent of the LCBOE and/or LCBOE either negligently or intentionally violated:

a)  The City's ordinances by failing to provide ample parking spaces for its employees and guests under section 3.017 of the City's ordinances; and

b)  Ms. Browning's civil rights by condoning trespassing upon her private, residential realty in violation of local ordinances and state law.

31.    The Superintendent of the LCBOE and/or the LCBOE condoned and failed to discourage parking of motor vehicles of family members of employees working at and students attending the School on Ms. Browning's private, residential realty.

32.    During a luncheon on November 16, 2023, for which the School charged a fee, at least thirty (30) individuals illegally parked their motor vehicles on Ms. Browning's private, residential realty in order to attend the School's event, even though Ms. Browning gave no one permission to park there on that date and called the School and specifically requested the School's personnel to advise the individuals illegally trespassing on her private, residential realty to move the approximately thirty (30) motor vehicles illegally parked there off her private, residential realty.

33.    The LCBOE also encouraged a student to trespass on Ms. Browning's private residential realty by dropping this student off a LCBOE school bus more than a block away from the School, resulting in the student walking across Ms. Browning's yard and across a public street in order to get to the School every day for a period of time.

34.    If the School had provided ample parking spaces for the School's employees and

12

guests, then that would have prevented the relevant incident altogether, as there would have been no need for individuals to illegally park on Ms. Browning's private, residential realty in order to attend the School's event on November 16, 2023.

**35.**     The violations by the LCBOE's Superintendent and other employees occurred as a result of an official policy, custom, and/or practice.

**36.**     The LCBOE's Superintendent and/or other employees acted in accordance with that official policy, custom, and/or practice.

**37.**     That official policy, custom, and/or practice violated Ms. Browning's civil and/or property rights.

**38.**     As a result of the unlawful activity of the LCBOE's Superintendent and/or other employees, Ms. Browning has faced numerous negative repercussions, including, without limitation, being both publicly and privately humiliated and having her good name and reputation subjected to numerous libelous and slanderous comments and is entitled to actual, compensatory, general, special, and/or statutory damages.

**COUNT II**

**VIOLATIONS BY LOGAN COUNTY SHERIFF'S DEPARTMENT**

**39.**     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

**40.**     SRO Brown, an employee of the Logan County Sheriff's Department in Logan County, Kentucky, assigned to the School as a School Resource Officer, **w**as neither equipped nor trained or supervised properly by the Logan County Sheriff's Department on November 16, 2023.

**41.**    SRO Brown left the School and walked to The Haven on November 16, 2023, and detained and arrested Ms. Browning while she was standing on her private, residential realty.

**42.**    The Logan County Sheriff's Department, including, without limitation, Sheriff Stratton, SRO Brown, Sgt Brent, and other members of the Logan County Sheriff's Department, failed and refused to protect Ms. Browning's rights as a victim of crime when they failed to cite the thirty (30) or more individuals who parked their motor vehicles in the paved area and on the grass at her private, residential realty, blocking access to The Haven by her, her mother, and her other expected guests on November 16, 2023, even though Ms. Browning gave no one permission to park there on that date and called the School and specifically asked the School's personnel to advise the trespassers to move their vehicles off her private realty.

**43.**    On November 16, 2023, SRO Brown violated Ms. Browning's federal and state civil and Constitutional rights when she was arrested by him on her own private, residential realty, although:

a) SRO Brown did not see Ms. Browning commit a crime (misdemeanor or felony) in his presence and had no probable cause to believe she had committed a felony. as required by Kentucky Revised Statutes 431.005 for an arrest of her.

b) Ms. Browning's conduct was justified under Kentucky law.

c) The Logan County Sheriff's Department failed to use standard procedures for investigating the force utilized by Ms. Browning

d) SRO Brown improperly arrested Ms. Browning for using force, as it was not determined that there was probable cause that the force allegedly used by Ms. Browning was unlawful.

14

e) Ms. Browning did not retreat and did not have a duty to retreat under Kentucky law, as she was standing on her own private, residential property- a place where she had a right to be.

f) The force allegedly used by Ms. Browning was permitted under Kentucky law.

g) As Ms. Browning was justified in using such force, she should have been immune from criminal prosecution, which includes arresting, detaining in custody, and charging or prosecuting.

**44.**    SRO Brown improperly charged Ms. Browning when he charged her with the following seven (7) crimes on November 16, 2023:

a) Disorderly Conduct, 2nd Degree, a Class B misdemeanor – KRS 525.060

b) Disorderly Conduct, 2nd Degree, a Class B misdemeanor – KRS 525.060

c) Fleeing/Evading Police, 2nd Degree, a Class A misdemeanor – KRS 520.100

d) Criminal Mischief, 2nd Degree, a Class A misdemeanor – 512.030

e) Criminal Mischief, 2nd Degree, a Class A misdemeanor – 512.0

f) Menacing, a Class B misdemeanor – KRS 508. 050

g) Tampering with Physical Evidence, a Class D felony – KRS 524.100

**45.**    As a result of her arrest by SRO Brown on November 16, 2023, Ms. Browning was:

a) taken to the Logan County Detention Center first and strip searched there.

b) was transferred to the Simpson County Detention Center and strip searched.

c) held without bond for twenty-two (22) hours before being released from jail.

**46.**    While Ms. Browning was being arrested by SRO Brown, Sgt Brent encouraged additional individuals to violate Ms. Browning's property rights.

**47.**    Sgt Brent, while on Ms. Browning's private, residential realty, read one of the very visible signs, which states that her realty was for "Residents and Guests of the Haven" and

next advised one of the individuals trespassing on Ms. Browning's private realty that, although the individual did not have Ms. Browning's permission to park there, it should be fine, because she was going to jail.

**48.**    SRO Brown and Sgt Brent appropriated Ms. Browning's private realty to another person without her consent.

**49.**    Sgt Brent encouraged the violation of Ms. Browning's federal and state civil and Constitutional property rights by stating that she should be "cordial" and allow her private realty to be used without permission.

**50.**    Sgt Brent referred to Ms. Browning as "crazy" to one of the individuals trespassing on her private realty rather than advising the trespasser of the City's ordinances and the state's laws against trespassing on private realty.

**51.**    The actions taken by SRO Brown and Sgt Brent against Ms. Browning and their inaction on behalf of Ms. Browning on November 16, 2023, constitute an illegal taking of Ms. Browning's private realty under color of law in violation of her federal and state civil and Constitutional rights by the Logan County Sheriff's Department.

**52.**    The failure to act on Ms. Browning's behalf and actions wrongfully taken against Ms. Browing by Sheriff Stratton and the Logan County Sheriff's Department were politically motivated retaliation against her for the exercise of her constitutional rights of association and to free speech.

**53.**    SRO Brown did not wear a body camera on November 16, 2023, as required by the Logan County Sheriff's Department's policies and procedures, and he had <u>not</u> been provided a body camera by Sheriff Stratton and/or the Logan County Sheriff's Department.

**54.** SRO Brown lied when he stated that The Haven was a business and a church. SRO Brown later admitted that he now knows that the Haven is Ms. Browning's private, residential realty, thereby admitting that he failed to investigate this matter prior to making these false statements.

**55.** SRO Brown repeated these inaccurate statements and additional inaccurate and inconsistent statements, as follows:

a) SRO Brown stated The Haven was commercial property, but he later admitted The Haven is Ms. Browning's residence and private property.

b) SRO Brown conceded that the School had not requested permission from Ms. Browning for parents to park at The Haven on this particular date and that Ms. Browning called the School about parents attending the event at the School and parking on her private property, which is a violation of the City's ordinances.

c) SRO Brown stated, "Why would I need to cite people for trespassing….", even though the trespassers were violating state law and City ordinances.

d) SRO Brown stated that he "saw" Ms. Browning puncture a tire, but he later stated he saw a silhouette of Ms. Browning walking around the back of a black pickup truck and heard a "loud popping sound" when he arrived at The Haven. He claimed that sound was the tire popping but admitted he did not see Ms. Browning puncture the tire. In contrast, he stated in the Uniform Citation that: "I saw the Perp with a large butcher knife go alongside a black pickup truck and puncture the front driver's side tire." Later, he stated he was told by a guest at the School that someone was slashing tires before he left the School and walked to the Haven. In fact, as now admitted by SRO Brown, Ms. Browning did not damage a single tire in his presence.

e)      Regarding his service weapon, initially, he stated, "I unholstered my weapon. I didn't point it at her. I just unholstered my weapon. I didn't point it at her. I just unholstered it". Later, he said: "I unholstered and slightly pulled my weapon out." and "My gun was partially out of the holster."

f)      SRO Brown originally stated: "Perp then lowered the weapon and said she was late to a wedding and ran into her residence," Later, he stated that Ms. Browning walked briskly into the residence but specifically stated that she was not running.

g)      SRO Brown inaccurately stated that he did not need to cite the trespassers due to the lack of "no trespassing" signs, which is not the law in either the City or Commonwealth of Kentucky. Specifically, he stated, "Why would I need to cite people for trespassing if there are no 'No Trespassing' signs there", even though Kentucky law defines Criminal Trespass as knowingly entering or remaining upon premises owned by another where the trespasser knew he did not have permission regardless of whether there are any signs.

h)      SRO Brown also failed to recognize that there is a City ordinance prohibiting Ms. Browning from posting a permanent "No Trespassing" sign on her private realty.

i)      He also stated that there is one "small" sign on the fence at The Haven when, in fact, Ms. Browning installed two 12"x 18" signs, one (1) on each side of the paved area, indicate that parking at The Haven was and is for "Residents and Guests of The Haven."

j)      SRO Brown falsely stated that the parents parking there at The Haven were not prohibiting Ms. Browning's guests and visitors from parking there when, in fact, Ms. Browning's elderly mother and other guests, who had been invited to The Haven for lunch that day, were blocked from parking there at The Haven on the date and at

the time in question, as the realty contained at least thirty (30) vehicles on the paved area and covering the grassy areas.

56.     At the Preliminary Hearing on December 14, 2023, the Commonwealth presented many of SRO Brown's conflicting, inaccurate, and untrue statements to Special Judge Gabe Pendleton, who found probable cause to send all seven (7) of charges levied against her by SRO Brown to the Logan County Grand Jury based upon the misinformation provided to him by the Commonwealth.

57.     On February 16, 2024, the Commonwealth presented many of SRO Brown's conflicting, inaccurate, and untrue statements to the Logan County Grand Jury.

58.     The Logan County Grand Jurors returned a **No True Bill** on the following six (6) of the seven (7) original charges:

   a)  Disorderly Conduct, 2nd Degree, a Class B misdemeanor – KRS 525.060

   b)  Disorderly Conduct, 2nd Degree, a Class B misdemeanor – KRS 525.060

   c)  Fleeing/Evading Police, 2nd Degree, a Class A misdemeanor – KRS 520.100

   d)  Criminal Mischief, 2nd Degree, a Class A misdemeanor – KRS 512.030

   e)  Menacing, a Class B misdemeanor – KRS 508. 050

   f)  Tampering with Physical Evidence, a Class D felony – KRS 524.100.

59.     The Logan County Grand Jury only charged Ms. Browning with one (1) count of Criminal Mischief, 2nd Degree, a Class A misdemeanor – KRS 512.030.

60.     While Ms. Browning was found guilty of Criminal Mischief, she has appealed that verdict based upon several palpable errors by the Special Logan District Court Judge.

61.     Defendants, Sheriff Stratton, SRO Brown, and Sgt Brent violated Plaintiff's Fourth Amendment rights by failing to properly investigate and cite the trespassers on her property and instead targeting Plaintiff without legal justification.

62.     SRO Brown, and Sgt Brent owed a duty of care to Plaintiff to act reasonably in addressing complaints regarding trespassing on Plaintiff's property and refraining from making false or misleading statements about her conduct and the legal status of her residence.

63.     By, *inter alia*, falsely stating that The Haven was a business and/or church and failing to enforce the law to protect Plaintiff's property, Defendants breached this duty of care.

64.     As a direct and foreseeable result of SRO Brown and Sgt Brent's actions and/or inactions, Plaintiff has suffered from the negligent infliction of severe emotional distress, including, without limitation, anxiety, embarrassment, humiliation, and frustration.

65.     Plaintiff is entitled to actual, compensatory, general, punitive, special, and/or statutory damages for the negligent infliction of emotional distress.

66.     SRO Brown and Sgt Brent intentionally caused Plaintiff emotional distress by recklessly overcharging her with criminal activity, making inconsistent statements to authorities and the press, and failing to protect Plaintiff's rights.

67.     The intentional actions of SRO Brown and Sgt Brent were outrageous and intolerable in a civilized community, and their conduct was intended to and did embarrass, harass, and humiliate Plaintiff.

68.     As a direct result of their actions and/or inactions, Plaintiff has suffered severe emotional distress, including, without limitation, anxiety, embarrassment, humiliation,

and frustration, for which she is entitled to compensatory, general, punitive, special, and statutory damages for the intentional infliction of emotional distress.

**69.**    Defendants Brown and Brent acted toward Plaintiff with oppression and malice.

**70.**    Sheriff Stratton, had a ministerial duty and obligation to hire qualified and adequately trained individuals and properly train and supervise employees, including SRO Brown and Sgt Brent, to ensure they adequately and properly enforced the law, and acted with reasonable care and in good faith.

**71.**    Sheriff Stratton failed to adequately and properly train and supervise SRO from and Sgt Brent.

**72.**    Sheriff Stratton negligently hired and/or retained SRO Brown and Sgt Brent.

**73.**    Plaintiff is entitled to compensatory, general, punitive, special, and/or statutory damages for the civil and constitutional violations of her rights by and/or the tortious actions and/or omissions of SRO Brown and/or Sgt Brent.

**74.**    As a result of the unlawful activity of Sheriff Stratton and his deputies, Ms. Browning has faced numerous negative repercussions, including, without limitation:

(a)    Ms. Browning was both publicly and privately humiliated.

(b)    Ms. Browning was strip searched by corrections and\or law enforcement officers at two (2) different locations.

(c)    Ms. Browning was detained in two (2) different jails and was retained in custody for approximately twenty-two (22) hours without a bond, despite having no previous criminal record.

(d)    Ms. Browning has been forced to retain legal counsel and incur thousands of dollars in legal fees to protect her law license and property and federal and state civil and Constitutional rights.

(e)    Ms. Browning's good name and reputation have been subjected to numerous libelous and slanderous comments by members of the bar, community, and public, as well as local and regional media outlets.

(f)    Ms. Browning was forced to personally confront multiple trespassers after this incident, one of whom was very threatening and rude to her.

## COUNT IV

## VIOLATIONS BY LOGAN COUNTY PROPERTY VALUATION ADMINISTRATOR

**75.**    Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

**76.**    Defendant, Logan County PVA, Timothy Rainwaters, negligently and wrongfully increased the assessment on The Haven from $8,000 to $250,000, an increase of over 31 times its original assessment, and re-labeled it as a "Venue – Bed & Breakfast", even though Ms. Browning never utilized The Haven commercially and has not added a single square foot to it.

**77.**    This action was taken by PVA Rainwaters in bad faith.

**78.**    Ms. Browning had to meet with the Logan County PVA.

**79.**    After the meeting, PVA Rainwater lowered the assessment and changed the designation of the property back to residential.

**80.**    After this incident, Ms. Browning received a letter addressed to "The Haven c/o Sue Carl Browning" from the Kentucky Finance and Administration Cabinet,

Department of Revenue, Office of Property Valuation, for Tangible Personal Property Tax for Periods(s) 2022, 2023, & 2024 on June 25, 2024.

81.     Ms. Browning was forced to hire legal counsel to advise her and communicate with the Kentucky Finance & Administration Cabinet.

82.     The Logan County PVA violated Ms. Browning's right to equal protection and peaceful and quiet enjoyment of her private, residential realty.

83.     The Logan County PVA and the representative of the Kentucky Finance & Administration Cabinet both admitted that their actions were based on an anonymous call, and they both took theses actions against Ms. Browning without further investigation.

84.     The representative of the Kentucky Finance & Administration Cabinet advised Ms. Browning that her property was advertised for rent through VRBO, called, "The Haven", so a bill was sent to her for grossly increased taxes and a bill for multiple years of intangible tax.

85.     Ms. Browning quickly searched while the representative was on the phone, very concerned about a scam involving her private property

86.     The property advertised was in Paducah, Kentucky, which is approximately two hours from Auburn, Kentucky, and the pictures of the relevant listing in no way resembled Ms. Browning's property.

87.     The assessment of no other real property in Logan County has increased over 1000% in a single year when there has been no ownership change and no exterior modification whatsoever.

88. The Logan County PVA admonished Ms. Browning that the City should have been able to purchase the property, as if she did not have a right to make an offer and purchase the property in a fair market agreement with the seller after the property had been unused and unmaintained for multiple years.

89. Plaintiff is entitled to actual, compensatory, general, special, and/or statutory damages.

**WHEREFORE**, Ms. Browning, by counsel, prays for Judgment against Defendants, individually and/or jointly and/or severally, as follows:

1. For an award of actual, compensatory, general, punitive, special, and/or statutory damages, caused to Ms. Browning by Defendants' unlawful conversion and/or taking of her real property under color of law, false imprisonment of Ms. Browning, negligent and/or intentional infliction of emotional distress, and violations of her civil and constitutional rights under both the United States and Kentucky Constitutions and federal and state laws, including, without limitation, violations of her rights to due process of law; equal protection under the law; freedom of association; freedom of speech; privacy; and quiet enjoyment of her private realty as well as her rights under 18 USC Section 241 and 42 U.S.C. Section 1983, in an amount to be determined by a jury after a trial.

2. For a determination that the Logan County Sheriff's Department is liable, vicariously or otherwise, to Plaintiff for the damages caused to Plaintiff by the actions and/or inactions of his deputies.

3. For an award of punitive damages for Defendants' willful, malicious, and reckless actions.

4. For court costs and legal fees associated with bringing this civil action;

5. For all other proper and equitable relief to which Ms. Browning may be entitled.

Stella B. House,
Attorney at Law, P.S.C.

By:    /s/Stella B. House, J.D.
Stella B. House, J.D
Post Office Box 422
Manchester, Kentucky 40962-0422
(606) 598-1485
Stellabhousepsc@gmail.com
Bar No. 81805
COUNSEL FOR PLAINTIFF