UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-00134-GNS

SUE CAROL BROWNING                                                                                              PLAINTIFF

v.

LEON SMITH et al.                                                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 36, 38, 39), Defendants' Motion for Leave to File Excess Pages (DN 37), and Defendants' Motion to Amend (DN 49). The motions are ripe for adjudication.

### I.  STATEMENT OF FACTS AND CLAIMS

Sue Carol Browning ("Browning") is an attorney and former state district court judge. (Am. Compl. ¶ 7, DN 33). In 2019, she purchased a church building, which she named "The Haven," and uses it as a second home, often hosting celebrations for family and friends. (Am. Compl. ¶¶ 7, 10). Browning asserts that she has never used The Haven commercially. (Am. Compl. ¶ 76). At some point, Logan County Property Value Assessor Timothy Rainwaters ("Rainwaters") increased the tax assessment on The Haven from $8,000 to $25,000 and re-designated it as a "Venue – Bed & Breakfast," but later lowered the assessment and designated The Haven as "residential" after meeting with Browning. (Am. Compl. ¶¶ 76-79).

The Haven is located approximately one-half block away from Auburn Elementary and Middle School (the "School"). (Am. Compl. ¶¶ 6, 29). The School is operated by the Logan County Board of Education ("LCBOE"), whose superintendent is Leon Smith ("Smith"). (Am. Compl. ¶¶ 4, 28). On November 16, 2023, the School hosted a Thanksgiving luncheon for students

1

and their families.  (Am. Compl. ¶ 32; Def.'s Mem. Supp. Mot. Dismiss 1, DN 36-1 [hereinafter Smith's Mem. Supp. Mot. Dismiss]).  Browning alleges that attendees at the luncheon parked at The Haven due to insufficient parking spaces at the School.  (Am. Compl. ¶ 34).

The Logan County Sheriff's Department—specifically, School Resource Officer Vincent Lee Brown ("Brown"), Sergeant Jason Brent ("Brent"), and Sheriff Stephen Stratton ("Stratton") (collectively, "the Law Enforcement Defendants")—did not issue citations for any of the cars parked at The Haven without Browning's permission.  (Am. Compl. ¶ 42).  Brown, however, arrested Browning after she used a knife to puncture a tire of one vehicle parked at The Haven.  (Am Compl. ¶¶ 41, 55(d)).  Browning also alleges that Brent told one of the guests that "it should be fine" to park at the Haven "because [Browning] was going to jail."  (Am. Compl. ¶ 47).

Browning was charged with six misdemeanors and one felony.  (Am. Compl. ¶ 44).  The special judge appointed to preside over the case found probable cause to send all seven charges to the grand jury, which returned a true bill on only one charge.  (Am. Compl. ¶¶ 56, 58).  Following a trial in Logan District Court (Kentucky), Browning was convicted of criminal mischief in the second degree, which is a Class A misdemeanor.  (Am. Compl. ¶¶ 59-60).  Browning's conviction was subsequently upheld by the Logan Circuit Court on March 20, 2025.  *Browning v. Commonwealth*, No. 24-XX-00001, slip. op. at 18 (Logan Cir. Ct. Mar. 20, 2025).  The Kentucky Court of Appeals denied Browning's motion for discretionary review on July 28, 2025.  *Browning v. Commonwealth*, No. 2025-CA-000495 (Ky. App. Jul. 28, 2025).

Browning then filed this civil rights action against Rainwaters, Smith, and the Law Enforcement Defendants in their individual and official capacities.  (Am. Compl. 1).  The Amended Complaint contains numerous—often unspecified—federal and state law claims.  The Defendants have moved to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Def.'s Mot.

Dismiss, DN 36; Defs.' Mot. Dismiss, DN 38; Def.'s Mot. Dismiss, DN 39). The Law Enforcement Defendants have moved for leave to file excess pages and for leave to file an amended memorandum in support of their motion to dismiss. (Defs.' Mot. Leave File Excess Pages, DN 37; Defs.' Mot. Leave File Am. Mem., DN 49).

## II. JURISDICTION

The Court has jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the pendent state-law claims. *See* 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, "courts must accept as true all material allegations of the complaint[] and must construe the complaint in favor of the complaining party." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."

*Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

## IV.   DISCUSSION

### A.   Rainwaters

Browning alleges that PVA Rainwaters violated her Fourteenth Amendment right to equal protection[1] by increasing the assessment on her property and re-labeling it as a "Bed & Breakfast." (Am. Compl. ¶¶ 76, 82).[2] Specifically, she argues that she is a "class of one." (Pl.'s Resp. Def.'s Mot. Dismiss 3-4, DN 43 [hereinafter Pl.'s Resp. Rainwaters' Mot. Dismiss]).

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'no easy task' to plead a 'class-of-one' equal protection claim." *Gracey Gen. P'ship v. City of Clarksville*, No. 3:23-CV-01189, 2025 WL 73249, at *11 (M.D. Tenn. Jan. 10, 2025) (quoting *Andrews v. City of Mentor*, 11 F.4th 462, 478 (6th Cir. 2021) (Larsen, J., concurring in part and dissenting in part)). A plaintiff must allege that: "[1] she has been intentionally treated differently from others similarly situated[;] and [2] that there is no rational basis for the difference in treatment." *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020) (White, J., concurring) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "[A] comparator must be 'similarly situated in

---

[1] Browning brings all her federal claims under Section 1983. Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under Section 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Defendants only contest the first element in their motions to dismiss.

[2] To the extent that Browning intends to assert a claim for "quiet enjoyment," she plainly fails to state a claim upon which relief can be granted. (Am. Compl. ¶ 82). The covenant for quiet enjoyment applies to lessor-lessee relationships, and no lease is implicated here. *E.g.*, Annotation, *Breach of Covenant for Quiet Enjoyment in Lease*, 62 A.L.R. 1257 (originally published in 1929).

4

all relevant respects.'" *Fouts v. Warren City Council*, 97 F.4th 459, 470 (6th Cir. 2024) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012)), *cert. denied*, No. 24-155, 2024 WL 4486379 (Oct. 15, 2024). Next, to properly show that no rational basis exists for the disparate treatment, "[the plaintiff] must either 'negate every conceivable reason for the government's actions or [demonstrate] that the actions were motivated by animus or ill-will.'" *MacDonald v. City of Detroit*, 434 F. Supp. 3d 587, 598 (E.D. Mich. 2020) (alteration in original) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)).

In this instance, Browning asserts that "[t]he assessment of no other real property in Logan County has increased over 1000% in a single year when there has been no ownership change and no exterior modification whatsoever." (Am. Compl. ¶ 87). This assertion, however, does not state any effects of reclassification, and Browning rests her equal protection claim on Rainwaters' reclassification of The Haven as commercial property. (Pl.'s Resp. Rainwaters' Mot. Dismiss 3-4). To the contrary, Browning alleges that Rainwater promptly returned the property to a residential classification after their meeting.[3] Browning must show that other similarly situated individuals did not have their properties reclassified as commercial, while her property was, or that her assessment increased disproportionately when compared to other similarly situated individuals whose properties have also been reclassified as commercial. Because Browning identifies no comparators that are similarly situated, she fails to state a class-of-one equal protection claim.

---

[3] Indeed, as Rainwaters recognizes, it is not clear what injury Browning has suffered. (Def.'s Reply Mot. Dismiss 6, DN 47). Though Browning "had to meet with [Rainwaters]," her property was reclassified upon her request. (Am. Compl. ¶¶ 78-79). Browning also complains that she "was forced to hire legal counsel to advise her and communicate with the Kentucky Finance & Administration Cabinet," but the Cabinet is not party to this suit, and she does not allege that Rainwaters *caused* the Cabinet to take any action against her. (Am. Compl. ¶¶ 80-81, 84).

Accordingly, her equal protection claim against Rainwaters in his individual and official capacity is dismissed.[4]

### B. Smith

Browning alleges that Smith condoned and encouraged trespassing on her property in violation of her "civil and/or property rights." (Am. Compl. ¶¶ 30-33, 37). In particular, she alleges violations of her Fifth Amendment right to just compensation and her Fourteenth Amendment right to due process.[5] (Pl.'s Resp. Def.'s Mot. Dismiss 4, 9, DN 45 [hereinafter Pl.'s Resp. Smith's Mot. Dismiss]).

#### 1. *Taking*

The Fifth Amendment's Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V; *Slaybaugh v. Rutherford Cnty.*, 114 F.4th 593, 596 (6th Cir. 2024) (stating that the Takings Clause applies to the states through the Fourteenth Amendment), *cert. denied*, 145 S. Ct. 1959 (2025). "The Supreme Court has recognized two categories of takings: regulatory and physical." *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville & Davidson Cnty.*, 130 F.3d 731, 737 (6th Cir. 1997). Browning alleges a physical taking. (Pl.'s Resp. Smith's Mot. Dismiss 2). "Only '[w]hen the government physically takes possession of an interest in property,' or authorizes a 'physical occupation . . . by a third party,' does state action rise to the level of a taking." *Wilkins v. Daniels*, 744 F.3d 409, 418 (6th Cir. 2014) (alteration in original) (internal citations omitted). "Authorization to a third party alone

---

[4] Rainwaters also argues that Browning's claim should be dismissed on the basis of comity, Browning failed to exhaust her administrative remedies, and he is protected by multiple immunities. Because the Court has granted dismissal of Browning's claim against Rainwaters based on her failure to allege necessary facts, the Court need not address these other arguments.
[5] Browning concedes that she did not and cannot state claims against Smith for the violation of a city ordinance, violation of her state civil rights, or trespass. (Pl.'s Resp. Smith's Mot. Dismiss 2, 5).

can confer liability on the government even when the third party technically executes the taking." *King v. United States*, 159 Fed. Cl. 450, 478 (2022).

In this instance, Browning concedes that neither Smith nor LCBOE trespassed on her property on the day of the Thanksgiving luncheon. (Pl.'s Resp. Smith's Mot. Dismiss 5). Browning does not allege that Smith authorized anyone to park on Browning's property, nor does she plead any facts to support a claim of trespass against LCBOE. Instead, Browning argues that Smith failed to provide adequate parking and "condoned and failed to discourage" parking on Browning's property. (Am. Compl. ¶¶ 31, 34). A failure to control the actions of third parties, however, does not amount to a taking. *King*, 159 Fed. Cl. at 478 (the government's failure to prevent a trespass was not a taking because "there was no governmental action . . . at all" (quoting *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998))). Accordingly, Browning's takings claim against Smith must be dismissed.

### 2. *Due Process*

The Fourteenth Amendment regulates the actions of the state, not private actors. *Franz v. Oxford Cmty. Sch. Dist.*, 132 F.4th 447, 451 (6th Cir. 2025). The government, however, has a duty to protect individuals against private acts of violence where a "special relationship"—typically, a custodial relationship—exists between the government and the individual. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-201 (1989); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). In the absence of a special relationship, "state actors can be liable for harms caused by private actors" under the "state-created dangers" doctrine if the following elements are met:

> First, a state official must take an "affirmative act" that creates or increases the risk that a victim will be harmed by a private actor. Second, this risk must pose a "special danger to a specific victim"—meaning a danger, to that victim, greater than the danger to the public generally. Third, the state official's conduct must be

7

"so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Franz*, 132 F.4th at 451 (6th Cir. 2025) (internal citations omitted) (citation omitted). Under this doctrine, the "failure to act is not an affirmative act . . . ." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Browning argues that Smith failed to provide adequate parking, and that his inaction created or exacerbated a danger to her, in violation of her due process rights under the Fourteenth Amendment. (Pl.'s Resp. Smith's Mot. Dismiss 9). Browning does not allege that she had any "special relationship" with Smith or the School. Because there is no special relationship, Smith can only be held liable for dangers arising from his affirmative actions. As discussed above, Browning has not pled that Smith committed any affirmative act, or engaged in any egregious or shocking conduct. Accordingly, Browning's due process claim against Smith must be dismissed.[6]

### C. <u>Law Enforcement Defendants</u>

The Law Enforcement Defendants filed a Motion for Leave to File Excess Pages (DN 37), Motion to Dismiss (DN 38), and Motion to Amend (DN 49). Because the Motion for Leave to File in Excess Pages and Motion to Amend are both appropriate and unopposed, these motions are granted. Turning to the Law Enforcement Defendants' Motion to Dismiss, the Court will address each of the Law Enforcement Defendants' arguments in turn.[7]

---

[6] Because both claims against Smith are dismissed, the Court need not consider his immunity arguments.

[7] Browning states that all alleged violations of federal law occurred on or after November 15, 2023. (Pl.'s Resp. Defs.' Mot. Dismiss 3, DN 44 [hereinafter Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss]). Accordingly, the Court will not construe any allegation of actions taken before this date as constituting a federal claim. Browning also states that Defendants' arguments relating to an eviction from her primary residence and the failure to prosecute third parties and protect her property "misinterpret Plaintiff's timeline of events and claims," and that "'[t]he Factual Background' in the referenced paragraphs of the Complaint mainly contain historical information . . . ." (Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss 8). The Court construes

1.  *Section 1983 Claims*

    a.  **False Arrest, Retaliatory Arrest, and Malicious Prosecution**

Browning brings two claims under the Fourth Amendment—false arrest and malicious prosecution—and one under the First Amendment—retaliatory arrest—related to her arrest and subsequent prosecution. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). Next, a malicious prosecution claim requires a plaintiff to prove the following four elements:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alteration in original) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)). Finally, as the Sixth Circuit has explained:

> A claim for retaliatory arrest requires, at a minimum, that the plaintiff make three related showings: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two[—]that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Wesley v. Campbell*, 779 F.3d 421, 435 (6th Cir. 2015) (quoting *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011)). Generally, when the "adverse action" is criminal prosecution or

---

this as an acknowledgement that her Amended Complaint does not bring any claims on these bases. Additionally, in the Amended Complaint, Browning seeks relief based on Defendants' violations of "her rights under 18 USC Section 241 and 42 USC Section 1983," but her response does not address the Law Enforcement Defendants' arguments that she has no rights under either section. (Am. Compl. 24). To the extent she is asserting violations of rights granted by these sections, Browning has waived those claims, which are dismissed. *See Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008); *Graham v. Connor*, 490 U.S. 386, 394 (1989).

an arrest, a plaintiff must plead the absence of probable cause. *Brown v. City of Albion*, 136 F.4th 331, 338 (6th Cir. 2025) (citing *Nieves v. Bartlett*, 587 U.S. 391, 401-02 (2019)) (explaining that absence of probable cause is not required when there is an official retaliatory policy or objective evidence that similarly situated individuals were not arrested).

Thus, all three claims require the absence of probable cause. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a [Section] 1983 action asserting that the arrest was made without probable cause." *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986)).

Because Browning was indicted and ultimately convicted of criminal mischief, the Law Enforcement Defendants claim that she cannot now bring a wrongful arrest, malicious prosecution, or retaliatory arrest claim based on any of the seven charges. (Defs.' Mot. Am. Ex. 1, at 8-9, 13-14, DN 49-1 [hereinafter Law Enforcement Defs.' Am. Mem. Supp. Mot. Dismiss]). Indeed, Browning's false arrest and retaliatory arrest claims fail as a matter of law because Browning cannot demonstrate that the Law Enforcement Defendants lacked probable cause by virtue of her conviction.[8] *Howell v. McCormick*, 148 F.4th 834, 849 (6th Cir. 2025) ("Unlike a malicious-

---

[8] Browning also asserts that Brown admitted that she did not damage any tires—the allegation that she implies is the basis for the criminal mischief charge—in his presence. (Am. Compl. ¶ 55(d)). Accordingly, she argues, to have lawfully arrested Browning, Brown would have needed probable cause that she committed a different misdemeanor in his presence or committed a felony. While this may be true under state law, this has no effect on her federal constitutional claims. "Courts in this Circuit have held that, while state law may mandate that a misdemeanor take place in the presence of the arresting officer, the federal Constitution has no such requirement." *Holloran v. Duncan*, No. 13-1050, 2015 WL 12434364, at *1 (W.D. Tenn. Apr. 23, 2015) (citations omitted); *see Straub v. Kilgore*, 100 F. App'x 379, 384 (6th Cir. 2004) ("[W]hether the misdemeanor

prosecution claim, a claim alleging an unconstitutional false arrest will fail as long as the officers had probable cause for one of these offenses." (internal citations omitted)). Accordingly, Browning's false arrest and retaliatory arrest claims are dismissed.[9]

### b. Taking

Browning also alleges the Law Enforcement Defendants "appropriated" her property in violation of her Fifth Amendment rights. (Am. Compl. ¶ 48; Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss 10-11). "Isolated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right."

---

occurred in Kilgore's presence is not material to the issue of whether there was probable cause to arrest Straub. The district court erroneously stated that when a police officer makes a warrantless arrest for a misdemeanor, the Constitution requires that the misdemeanor take place in the officer's presence. While this may be a requirement under Kentucky law, it is not a federal constitutional requirement." (citation omitted)).

[9] Neither party cited *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024), which changed the law on this point for malicious prosecution, holding that a conviction on one charge did not establish probable cause to defeat a malicious prosecution claim for other charges for which there was no conviction. *See Generis Ent., LLC v. Donley*, No. 24-12661, 2025 WL 1982872, at *16 (E.D. Mich. July 8, 2025) (citing *Chiaverini* to support analyzing retaliatory prosecution claim charge by charge). The Sixth Circuit has subsequently held, however, that the law in effect at the time of arrest would control in such cases and that qualified immunity would shield officers from malicious prosecution claims under the law at the time of the prosecution. *Howell*, 148 F.4th at 854. As the Sixth Circuit explained:

> Before that 2024 decision, we had established the opposite legal rule: that probable cause on one charge categorically forecloses malicious-prosecution claims in multicount cases. And the conduct in this case arose before *Chiaverini*. That case thus had not clearly established its new approach "at the time" of [the plaintiff's] prosecution. Our old approach—under which the probable cause on [one] charge automatically doomed [the plaintiff's] malicious-prosecution claim—would have barred [the plaintiff] from relying on the [other] charge. In short, because probable cause supported "at least one of the charges," [the plaintiff] cannot establish that [the officer] infringed "clearly established law" and so "qualified immunity" protects him.

*Id.* (internal citations omitted) (citation omitted). Accordingly, Browning's malicious prosecution claims are also dismissed.

11

*Cedar Point Nursery v. Hassid*, 594 U.S. 139, 159 (2021) ("Unlike a mere trespass, the regulation grants a formal entitlement to physically invade the growers' land."). For example, if a government-employed-truckdriver parked on someone's land to eat lunch, that is a trespass, not a taking. *Id.* at 160.

The Law Enforcement Defendants point out there are no allegations that they authorized third parties to park on Browning's property and that this was merely a trespass, not a taking by the Law Enforcement Defendants. (Law Enforcement Defs.' Am. Mem. Supp. Mot. Dismiss 15-16). Browning alleges that Brent told a trespasser that it "should be fine" to park on her property "because [Browning] was going to jail." (Am. Compl. ¶ 47). Browning also asserted that this "was not an isolated incident," and pointed to numerous factual allegations in support of this claim. (Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss 10-11). Crucially, these other allegations are based on omissions, not actions, by the Law Enforcement Defendants.[10] Accordingly, the only government action that could be the basis of Browning's taking claim is Brent's "authorization" of the trespassers' parking on her property.

Even viewed in the light most favorable to Browning, she has not alleged facts that show Brent granted the trespassers a "right of access" or "formal entitlement" to Browning's property. At most, Browning alleges that Brent implied there would be no consequences for the guests parking on her property. Regardless, members of the public parking on Browning's property to attend the luncheon at the School, like a truckdriver parking to eat lunch, would be a trespass, not a taking. *Cedar Point Nursery*, 594 U.S. at 160. Accordingly, Browning fails to state a takings claim, and the Law Enforcement Defendants are entitled to dismissal.

---

[10] Additionally, this assertion contradicts Browning's earlier concession that "the violations of her federal rights occurred on or after November 15, 2023." (Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss 3).

### c. Due Process

Browning alleges that the Law Enforcement Defendants violated her due process rights by creating or exacerbating a danger to her through their actions and omissions. (Pl.'s Resp. Law Enforcement Defs.' Mot. Dismiss 7). As discussed above, Browning has not alleged any special relationship with the Law Enforcement Defendants. While she does plead an affirmative act—Brent allegedly told the trespassers it was fine to park on Browning's property because she was going to jail—and a danger—she "was forced to personally confront multiple trespassers after this incident, one of whom was very threatening and rude to her"—she does not demonstrate that this danger was in any way related to Brent's affirmative action. (Am. Compl. ¶ 74(f)). Accordingly, her due process claim is dismissed.[11]

### d. Failure to Train or Supervise

Browning has sued the Law Enforcement Defendants in their official capacities. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978). In this instance, the official capacity claims against the Law Enforcement Defendants are really against Logan County. For a county government to be liable for the actions of its employees under *Monell*, a causal link must connect the alleged constitutional deprivation to a policy or custom of the county government. *See Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). To establish liability, a plaintiff must "(1) identify the [county] policy or

---

[11] Browning's allegations relating to her unconstitutional arrest and prosecution are considered under the Fourth and First Amendments. Any duplicative claim under the due process clause is also dismissed. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Cox v. Crowe*, No. 5:09-CV-00005-JBC, 2009 WL 1562606, at *3 (E.D. Ky. June 3, 2009) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

custom, (2) connect the policy to the [county], and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

To identify an official policy or custom, a plaintiff may point to "(1) the [county's] legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 498 (W.D. Ky. 2021) (quoting *Jones v. Clark Cnty.*, 959 F.3d 748, 761 (6th Cir. 2020)). Browning only alleges that Stratton failed to adequately train and supervise Brown and Brent. (Am. Compl. ¶ 71).

> To establish a failure-to-train or -supervise claim, the plaintiff must demonstrate that (1) "the training or supervision was inadequate for the tasks performed;" (2) the municipality acted with "deliberate indifference" to the fact that "its inadequate training or supervision would lead its agents to violate constitutional rights;" and (3) the inadequate training or supervision "actually caused the plaintiff's injury."

*Paul v. Whitley Cnty. Det. Ctr.*, 712 F. Supp. 3d 907, 925 (E.D. Ky. 2024) (quoting *Mosier v. Evans*, 90 F.4th 541 (6th Cir. Jan. 9, 2024)), *aff'd sub nom. Paul v. Whitley Cnty., KY, Det. Ctr.*, No. 24-5142, 2024 WL 4362260 (6th Cir. Sept. 30, 2024).

Browning's allegations of failure to train and supervise are insufficient. (Am. Compl. ¶ 71). She has not alleged in the Amended Complaint any facts related to the training the Law Enforcement Defendants received, and the Court may not consider any new facts raised in her response. *See Sistrunk*, 545 F. Supp. 3d at 499; *Johnson v. Metro Gov't of Nashville & Davidson Cnty.*, 502 F. App'x 523, 542 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings." (citation omitted)). Browning has also

14

insufficiently pleaded that Stratton's supervision was deficient. Browning asserts only that Brown was not wearing a body camera and was never provided a body camera, but she does not demonstrate deliberate indifference to this fact or link the Sheriff Department's failure to properly equip Brown to the violation of her constitutional rights. (Am. Compl. ¶ 53). Accordingly, the motion to dismiss will be granted as to any *Monell* claim against the Law Enforcement Defendants.

### 2. *State Law Claims*

Having determined that all of Browning's federal claims should be dismissed, the Court must determine whether to exercise supplemental jurisdiction over her state law claims. Browning arguably asserts state law claim for negligent hiring and retention, malicious prosecution, false arrest, retaliatory arrest, IIED, NIED, and trespass. Pursuant to 28 U.S.C. § 1367:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

"Even where 'the [Court] arguably ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), the [C]ourt has discretion to decline to exercise its supplemental jurisdiction.'" *Frankel v. Detroit Med. Ctr.*, 409 F. Supp. 2d 833, 834 (E.D. Mich. 2005) (alterations in original) (quoting *Cirasuola v. Westrin*, No. 96-1360, 1997 WL 472176, at *1 (6th Cir. Aug. 18, 1997)); *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). When deciding whether to exercise supplemental jurisdiction, "a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-

15

52 (2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "The Sixth Circuit applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Southard v. Newcomb Oil Co.*, No. 3:18-CV-803-CRS, 2019 WL 961988, at *3 (W.D. Ky. Feb. 27, 2019) (internal quotation marks omitted) (quoting *Packard Farmers Ins. Co. of Columbus, Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011)). Moreover, "'[w]hen the . . . federal-law claim[s] in the action [have been] eliminated at an early stage of the litigation, [a] District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction.'" *Howell v. Father Maloney's Boys' Haven, Inc.*, 424 F. Supp. 3d 511, 521 (W.D. Ky.) (quoting *Carnegie-Mellon*, 484 U.S. at 351), *aff'd*, 976 F.3d 750 (6th Cir. 2020).

In this instance, the claims over which this Court would have original jurisdiction are dismissed, and this case is only at the motion-to-dismiss stage, so "this Court has not 'invested significant time' in this case nor possesses such a familiarity with the facts so as to be better suited to handle this matter than any other court." *Id.* at 522. Therefore, the Court declines to exercise its supplemental jurisdiction over any state-law claims Browning has asserted, and the state law claims are dismissed without prejudice.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motions to Dismiss (DN 36, 38, 39) are **GRANTED IN PART**. Plaintiff's federal claims against Defendants are **DISMISSED WITHOUT PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, those claims are **DISMISSED WITHOUT PREJUDICE**.

      2.      Defendants' Motion for Leave to File Excess Pages (DN 37) is **GRANTED**.

      3.      Defendants' Motion to Amend (DN 49) is **GRANTED**.

      4.      The Clerk shall strike this matter from the active docket.

*Greg N. Stivers, Chief Judge*
*United States District Court*

November 3, 2025

cc:    counsel of record